ROUSSEAU et ux. v. FEATHERSTON et al. (No. 1944.)*

(Court of Civil Appeals of Texas. El Paso, Feb. 3, 1927. Rehearing Denied Feb. 24, 1927.)

1. Husband and wife ⬯264—Finding that wife's merchandise had become indistinguishable from community estate held proper in wife's suit to enjoin selling drug store goods and fixtures under judgment against husband.

In suit to enjoin levying of execution and sale of fixtures and merchandise in drug store under judgment against husband, by virtue of claim of wife thereto as her separate property, finding that stock of drugs and sundries, though originally separate estate of wife, had become so mixed with community estate as to be indistinguishable, held sustained by evidence.

2. Husband and wife ⬯262(2)—Wife, seeking to enjoin sale by judgment creditor of husband of goods in drug store, had burden to prove how much was her separate estate.

In suit by husband and wife against judgment creditor of husband, to enjoin sale of stock of goods originally belonging to wife's separate estate, burden was upon wife to show how much of goods in drug store was her separate estate.

**3. Husband and wife ⬤➞264—Finding that wife failed to show what part of goods threatened to be sold under judgment against husband was her separate property held sustained by evidence.**

Finding, in suit by wife to enjoin sale of goods in drug store by husband's judgment creditor, that wife failed to show what part of drugs and sundries was her separate estate, *held* proper under evidence, where burden of proof was not sustained.

**4. Evidence ⬤➞588—Improbable and contradictory testimony does not bind court.**

Truth of testimony, which was improbable and was contradicted by other circumstances of witness' testimony, *held* not binding on court.

**5. Husband and wife ⬤➞269—Refusing to enjoin sale of goods under judgment against husband held not error, where wife failed to prove goods were separate estate.**

In suit by wife to restrain sale of drugs and sundries in drug store at instance of husband's judgment creditors, dissolving temporary injunction *held* not error, where stock in trade, though originally wife's separate estate, had become indistinguishably mixed with community estate, and where wife failed to show what part belonged to her.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by W. W. Rousseau and wife against Olen F. Featherston and others to restrain the levying of execution and sale of fixtures and merchandise in a drug store. From an order dissolving a temporary injunction as to the stock of goods therein, plaintiffs appeal. Affirmed.

Whitaker & Peticolas, of El Paso, for appellants.

Isaacks & Lattner, of El Paso, for appellees.

PELPHREY, C. J. This suit was filed by Sophie Rousseau, joined by her husband, to enjoin the levying of an execution and sale thereunder of certain fixtures and merchandise in a drug store in the town of La Tuna, Tex., operated under the name of Anthony Drug Company.

Appellants allege that a judgment was rendered in the Forty-First district court of El Paso county, Tex., against the Cactus Food Products Company, Inc., as principal, and H. A. Taylor and W. W. Rousseau, as sureties in the sum of $1,151.26; that Seth B. Orndorff, as sheriff, at the instance and request of Olen F. Featherston, was threatening to seize and sell the aforesaid fixtures and merchandise under an execution issued to enforce said judgment; that said fixtures and merchandise were owned by appellant Sophie Rousseau in her own separate right, having been purchased out of her separate estate acquired prior to her marriage, and

that appellant W. W. Rousseau had transferred and assigned to her all interest he had in said property, on April 13, 1925, and that irreparable injury would result to appellant Sophie Rousseau from such levy and sale unless appellees were enjoined.

On December 8, 1925, the court granted a temporary restraining order against the defendants upon appellant's executing a bond, and ordered appellees to appear and show cause why temporary injunction should not be issued.

The court, on December 14, 1925, granted a temporary injunction restraining appellees from levying said writ of execution.

Appellee, Olen F. Featherston, answered by general demurrer, general denial, and further answered, denying that property described in appellants' petition was separate property of appellant Sophie Rousseau, but alleged that said property was community property of appellants, purchased after their marriage and with community funds, and further alleged that bill of sale from appellant W. W. Rousseau to appellant Sophie Rousseau was executed for the purpose of defrauding creditors of said W. W. Rousseau, and was therefore ineffective.

On February 27, 1926, the court rendered judgment dissolving the injunction so far as it enjoined and restrained appellees from levying said writ of execution upon the stock of goods, drugs, merchandise, and sundries described, in appellants' petition, but perpetuating the temporary injunction so far as it applied to the furniture and fixtures and soda fountain described in said petition. From this judgment appellants have appealed.

At the request of appellants, the court filed the following findings of fact and conclusions of law:

"That the plaintiff Sophie Rousseau was seized and possessed of certain personal separate estate approximating $1,800. That said estate was kept intact and not mingled with any community estate, and was invested, or at least a part thereof, in Cactus Crystal Company, a business conducted in El Paso, Tex. That said business was sold to H. A. Taylor about the 30th day of January, 1925, and as a part of the consideration therefor the said Taylor executed and delivered to W. W. Rousseau eleven promissory notes in the sum of $100 each, payable to the order of W · W. Rousseau, signed by H. A. Taylor, being due monthly from their date, the notes bearing interest and providing for attorneys' fees; that, after note No. 1 had been paid, the said Rousseau sold the remaining ten to the defendant Featherston and took as pay therefor a certain ten acres of land in Don Ana County, N. M., which said land was deeded by defendant Featherston to plaintiff W. W. Rousseau, and the said Rousseau indorsed the said notes in blank. These notes when sold by W. W. Rousseau to Featherston were the property, separate estate, of the plaintiff Sophie Rousseau. Thereafter

the plaintiff W. W. Rousseau traded the land which he had previously taken from Featherston to one Kennedy for a drug store, stock, and fixtures located at Anthony (on the Texas side of the state line), upon which the defendant Featherston is seeking to have execution levied. In addition to the land aforesaid, the defendant Rousseau agreed to and did pay, as a part of the consideration for the drug store, stock, and fixtures, the sum of $500.

"That at the September term, 1925, of this court the defendant Olen F. Featherston, as plaintiff, brought suit on the said ten notes against Taylor, Cactus Products Company, Inc., and the defendant W. W. Rousseau, and thereafter obtained judgment against all of the said parties for the amount of said notes, interest and attorney's fees. That said judgment was rendered about the 23d day of September, 1925, and thereafter in due form an execution was issued on same against the plaintiff in this suit W. W. Rousseau, and the sheriff of El Paso county was threatening to levy same upon said drug store of the plaintiffs; this court issued a temporary injunction restraining the defendant Featherston and defendant Orndorff from proceeding with said execution until a final hearing thereon.

"That the fixtures of said drug store, including the soda fountain, are the separate estate of the plaintiff Sophie Rousseau. That the stock in trade, consisting of drugs and sundries in said drug store, were originally the separate estate of the plaintiff Sophie Rousseau, but since the purchase thereof same have been operated by the plaintiffs Sophie Rousseau and W. W. Rousseau, and the stock of drugs and sundries, originally being the separate estate of Sophie Rousseau, have become so mixed and mingled with the community estate that, if there be any part of same now, the separate estate of the said Sophie Rousseau, said separate estate cannot be distinguished and separated from the community. That the plaintiffs have not shown what part of said stock of drugs and sundries, if any, is the separate estate of the plaintiff Sophie Rousseau."

"From the foregoing findings of fact the court concludes as a matter of law that the temporary injunction heretofore issued should be perpetuated and made permanent as to the fixtures in said drug store, and that as to the stock in trade, consisting of drugs and sundries, said temporary injunction should be dissolved and held for naught."

### Opinion.

·[1] Appellants contend that the court erroneously found that the stock in trade, consisting of drugs and sundries, in the plaintiff's drug store, had become so mixed and mingled with the community estate that, if there was any part of same now separate estate of Sophie Rousseau, said separate estate cannot be distinguished and separated from the community, and insist that the undisputed evidence of plaintiff Sophie Rousseau showed that there is no merchandise in the stock that was not there when she purchased it with the exception of a small list of merchandise listed and pointed out by her at the time of the trial.

Appellant Sophie Rousseau testified as follows, relative to the operation of the Anthony Drug Company:

"I have not bought any large quantity of merchandise since I bought the store, because the business does not justify it. I bought from day to day. I buy a quarter of a dozen or half a dozen of whatever we need, just what we have to have. I have bought from Kelly & Pollard. I do not lay in a large stock because the business does not justify it. These are the bills from Kelly & Pollard to show what we have bought. We buy from day to day, I have no new merchandise in the store now other than what was in it when I bought the store, except that list there, which I made out, such as vases and chinaware. That is all the stuff that I have bought since buying the store, other than the drugs, just what we used from day to day. There has not been a great deal of proceeds of sales made in that store; we lived on part of it, except to buy the things that we just had to have; that is all, we just lived on it. It has taken all to live on. I do not know just the value of those articles I have on the list. I have the bills to show what it is; I cannot say right offhand what the value is. I guess the value is about $50 or $75. This list of goods. my counsel introduced in evidence were all the goods that we have bought, that we have on hand, since we have been in there. None of these items are items of drugs of any kind; there are the bills for the drugs right there that have been bought. The drugs that are there now are drugs that were there when we bought it. If there are any drugs or chemicals there now that were not on hand at the time we bought the drug store, it is very few; I can go and show you just exactly what it is. We have been turning the drugs over; we do quite a bit of credit business out there. The goods that we originally bought are still there. The majority of the drugs that we have bought from Kelly & Pollard have been sold; if there are any there, they are very few. The size of the stock now as compared to what it was when we bought is practically the same; there has not been hardly any turnover in the original stock, on the bills there is just what we bought from time to time. The stock would invoice now practically what it did then. I have the sales on record there, I don't know just exactly. Our sales have not run a great deal. We have done as little business as $6 a day and as high as $25. I cannot tell you what it would average a month, because I have not figured it out; we would buy one-quarter of a dozen at a time, or half a dozen, or whatever we needed; we ordered goods just as we needed them, just as customers called for them."

Our Supreme Court has held that profits from the wife's separate estate are community property (Jones v. Epperson, 69 Tex. 586, 7 S. W. 488), and in the present case, from the testimony of Mrs. Rousseau, we must conclude that at least a part of the profits made from the sale of the stock originally bought has been used in replenishing the stock. Her testimony shows that for a period of approximately ten months the gross sales have amounted to from $6 to $25 per day. We naturally presume that some profit

was made on said sales, and appellants' own testimony indicates that some of it was used in the purchase of stock to replace that sold.

[2, 3] The burden was upon her to show how much of the goods in the drug store were her separate estate, and, under the state of the evidence as we view it, this she has failed to and probably could not do.

[4] The truth of testimony of Mrs. Rousseau, being highly improbable and being contradicted by the circumstances which she herself related, was not binding on the court, and we find no error in the finding of the court that the separate estate of appellant Sophie Rousseau had become so mixed and mingled with the community estate as to be incapable of being distinguished.

[5] Neither do we find any error in the action of the court in dissolving the injunction as to the stock in trade, consisting of drugs and sundries.

Affirmed.